Okay, before we start the clock, I've got lots of lawyers and lots of people sitting up here, and I'm assuming, are you Shane Stevenson? Yes, I am, Your Honor. Okay, will you be using all the time for the appellant? I will. All right, and then I have John Simpson listed for Seaworld. Yes, Your Honor. Will you be using all the time? Yes, Your Honor. Okay, then we're clear on that. Okay, we're ready to start, so state your name and appearance. Thank you, Judge Callahan. My name is Shane Stevenson. May it please the Court, we're here, and I will attempt to reserve five minutes for rebuttal if I'm able. Okay, we're clear. We are here asking the Court on de novo review to reverse several errors made by the District Court below in its treatment of consumer protection laws under the states of California, Florida, and Texas. We think it's most helpful to start with the California UCL. Here, you can divide that analysis between the fraudulent prong and the unlawful and unfair prongs. If we start with the unlawful and unfairness prong, as you saw from our briefing, we're relying exclusively on Section 597B of the California Penal Code. That's the law that prevents animal cruelty. Now, we agreed with the District Court, or rather the District Court agreed with us, on two of the three considerations under this prong. There is no reliance test for an unlawful claim under the UCL, and there's no 9B that's relevant. What the Court then held was that you have to show causation. That is, you have to show the nexus. Exactly. You have to show a nexus between the unlawful act. Okay, so I had to wade through a lot here. Sure. But the spot where I thought you came closest was on the deprivation of food if they didn't do — if the animals didn't do what they were supposed to do. Yes, Judge Gallagher. Firstly, you know, this is on a motion to dismiss. So in terms of getting into the weeds of the facts we allege, obviously our second-minute complaint is complete with — Okay. Let's assume that you get there. But what in terms of nexus of people not buying a ticket or buying — that they wouldn't have bought a ticket if they would have known you don't — there's nothing in the record? Well, the nexus in terms of the causation under the unlawful prong is this, and I would refer the Court to the Baucus case which we discussed. So in a nutshell, the Court held that this was the logic that applies. You have to show that the unlawful behavior to wit the violation of the animal cruelty statute was the reason you purchased the tickets. The law says that has to be the reason you suffered the injury. The Baucus case was a case where a plaintiff bought General Mills baking products that unwittingly that included trans fats, and those trans fats are prohibited under a separate California law. The plaintiff didn't buy the products because they had the trans fats. That's not the test. He suffered injury because he bought them in a context where their production violated the law. Exactly on point here. These plaintiffs purchased tickets to an orca show, to Shamu shows that are produced of necessity, per the logic of Seaworld, under conditions of cruelty. That gives them standing at this stage of the motion to dismiss to challenge under the fraudulent prong. So if the Court agrees that the logic of Baucus is more compelling than the Court's invention, we should proceed. But if you could get through all of that, but it doesn't appear that you've been that you've really alleged it, then what you get is leave to amend, right? Well, I mean, in terms of, you know, I don't think you have anything on nexus here in your complaint, but maybe you can if you can get past certain other things. And I'm not sure if by nexus you're referring more broadly to the nexus that will allow the plaintiff to proceed under the fraudulent prong of the UCL, but the discrete point I was just trying to make initially with respect to the unlawful prong is that is sufficient for standing. If you purchased those tickets in a context where the corporation was violating a separate discrete law, that is what the UCL unlawful prong allows the plaintiff to proceed under. The separate question of nexus 9b reliance under the fraudulent prong I will turn to now, but our point is just that whatever the Court decides with respect to the fraudulent prong. Let me get to that. Yes, Judge Shulman. With respect to the criminal statute, are consumers within the zone of protection of that criminal statute, or does the zone of protection concept have any bearing here? I didn't hear the last part. I'm sorry. Does the zone of concept have any bearing here? It does not in that respect, Your Honor. So the CWIL points out in their brief, although the district court made no point of it, that the plaintiffs did not articulate the phrase criminal negligence, but they do at one point seem to acknowledge that facts sufficient for pleading purposes to establish the substance of criminal negligence would suffice. I know when I was a prosecutor, you had to name the offense. As a civil matter, they don't have to name it. They just have to allege facts that are tantamount, at least for pleading purposes, to a substantive violation. Well, I'm satisfied you've got a criminal violation. The point is, is that statute intended to protect consumers as opposed to animals? Well, I get your point now, Judge Selden. As we read the California unfair competition law and its unlawful and unfairness prongs, a plaintiff can point to any statute. It does not have to be a consumer protection statute. And we point the Court to the Great Bull Run case. That case survived a motion to dismiss that relied upon the same exact animal, the same exact California Penal Code, 597B, and that survived a motion to dismiss under similar circumstances. So I would note that case again. With respect to the fraudulent prong, and this is slightly more complicated than the unlawful and unfair prongs, so I won't detain the Court on a long discussion of Wilson unless the Court wishes to jump into it. But the district court did two things with the UCL fraudulent prong. Number one, it held that under California law, there is no duty to disclose unless you allege consumer safety issues, period. And that's based upon the 2012 case by this Court in Wilson v. Hewlett-Packard. Secondly, the Court said even if you could establish a duty, you would have to, under the Daniel decision of this Court, you would have to articulate a plausible method of disclosure whereby the plaintiffs would have learned of the omitted information. Again, that's a plausible method. And that if that method was used, the plaintiffs would have learned it. Those are the two rulings of the Court on the fraudulent prong. So our arguments are really there's four types. There's first, that Wilson simply does not apply here. I know from other cases our firm is handling, this Wilson case is before the Court in a number of panels. But those cases all involve manufactured products. And the concern addressed in Wilson is that you are having end runs around warranties and you are having claims brought challenging defects or purported defects, safety defects, often in car cases. And this is a challenge to that Wilson decision was meant to say unless you articulate safety, if you have a defect that manifests outside the warranty period, we are not going to create an endless warranty. It just does not apply here. SeaWorld in many respects is sui generis, and in this respect it really is. And so ---- I'm trying to figure out what this ---- okay. So this is a class action, right? Correct, Your Honor. All right. So under your unlawful prong of the UCL, let's just if for hypothetically let's assume that survives. Because the complaint alleges that SeaWorld deprives orcas of food when training and positive reinforcement fail to yield the uninterrupted compliance SeaWorld demands of its orcas, right? And the second consolidated amended complaint, I think. California's animal cruelty statute criminalizes, among other things, the deprivation of necessary substance. Okay, that's 597B. So if we were to accept that as true and say that you've alleged a violation, what this class is ---- so everyone that's ever brought a ticket, then under this class, is in the ---- is that they're in this class? Well, thank you for that question. It seems like it has some of the Wal-Mart problems. So Wal-Mart, a very different kind of case, an employee case, the Supreme Court case in Wal-Mart I assume the Court's referencing here. So two things, if I may, Your Honor. Number one, in addition to the section of 597B that you highlight, I would also highlight the broader category of needless suffering. So there are literally hundreds of paragraphs of our second amended complaint that document paragraph after paragraph after paragraph of the suffering that the animals, that these orcas experience at the three SeaWorld parks. And without getting hyperbolic, we have listed all of those not to engage in hyperbole but to establish this very fact, that the 30 or so animals that are captive in those three parks live a very, very different life than animals in the wild. So everyone that's bought a ticket is in your class? Well, we have a statute of limitations, of course, Your Honor. So it's the four-year period under the three State laws. And it applies to anyone who was unaware of these, who bought these, unwittingly purchased these tickets at SeaWorld, and would not have done so but for these material emissions. How can that be? People buy tickets for all sorts of different reasons. Some people don't care. And those people won't be seeking refunds if they don't care. But the people who do care, and that is many people, as the Court's well aware and as we pleaded, the day that SeaWorld finally admitted after years of denial, almost a year of denial, which is now the subject of the Department of Justice investigation, after years of denying that this was material to the public, they admitted it was and their stock dropped 30 percent in one day. So what do they get under the UCL? I'm sorry? What are the damages? The damages would be the return of the money spent on memberships, admissions, and ORCA experiences. That's how we articulated it in the Second Amendment complaint. And attorney's fees? Attorneys? Off the top of my head, I don't recall if there's a separate. There's not a provision for attorneys. It's not a 1983 claim or False Claims Act. There's not a separate provision for attorneys. You're not doing this for free, though. What's that? You're not doing this for free. I would do this for free if you're asking me, Your Honor. But the point as to Wilson, so I won't go further on Wilson. I know the courts have addressed it. I think we exhaustively addressed Wilson in the brief. The second point there is that if the court does find that the district court's what we consider misread of Wilson literally stands for the proposition under California law, quite anomalously, under California law, that all claims of admissions must implicate safety, that law has been superseded by Rutledge and now by Gutierrez, both of which are California appellate court decisions which, in the absence of a And isn't that a very good point? The development of the requirements for disclosure really haven't been addressed by the California Supreme Court. Why shouldn't we ask the California Supreme Court to provide this Court and the courts of California generally some guidance on how far the requirement pertains when you have an admission? Well, I do know, Judge Sano, that there is a request in another unrelated matter asking for certification of the Wilson question to the Court. My recollection is that there is some question as to whether the Court is properly sending it for certification in circumstances where the result of that certification would not be dispositive of the case. That certainly would not be dispositive of this whole case, but I defer to the Court on the propriety of that. I do think, though, and, you know, mindful, this is what the Jesuits taught me. You look at the text, and I would respectfully submit to the Court a careful, systemic read of the Wilson opinion makes very plain that it simply does not apply to circumstances like this. Wilson actually says it does not apply to services. It does not apply to cases where the warranty, where the defect manifests within the warranty period. And so I could leave it there. I notice I'm into my rebuttal time. Let me hear Judge Wallace. Did you have any questions, or can he reserve for rebuttal? Sure. That would be fine. Okay. Thank you, Your Honor. Can I ask you one question? Go ahead. Is there any evidence in the record that the ORCA has provided a degraded performance as a result of their treatment? Provide? That they provide, that they perform less well by the standards of SeaWorld in terms of the beauty of their jumps and such? Yeah. In terms of the experience that the consumer had watching them jump and do tricks and eat food, is there any evidence that the conduct here degraded the experience that the consumer had in terms of what the consumer saw? Well, if, Judge Selma, if you're asking by that, does it, it is sort of like the Kwikset case. The question there would be, do the locks work properly? That's the California Supreme Court case that Hinojos, this Court's decision, rested upon. But what's the record? And Kwikset said if the lock works, the defendant said if the lock works, it doesn't matter where it was made. Did the ORCAs work? That's my question. Well, we don't know what a cruelty-free marine park would look like because the world doesn't have any of them. So we've never seen ORCAs that are captive performing under conditions other than ones where they're sitting for hours in a medical pool that's two feet above my head for hours and hours in three of the hottest climates in the United States and how that affects their performance. Okay. Thank you. May it please the Court, John Simpson representing the defendant appellee, SeaWorld Entertainment, Inc. Just to address the unlawful prong of the UCL argument that was just made, even if you assume that all of the, everything that's been pleaded in this complaint actually under Section 597. The basic problem here, that conduct did not cause, was not the immediate cause, to quote Tobacco II, was not a substantial factor, to quote Tobacco II, in the reason these people bought their tickets to SeaWorld. They've specifically pleaded in this complaint that they were totally unaware of all of these things that they say SeaWorld should have disclosed. But I don't know on the UCL, it's not the same on the UCL as it is on the other claims. Your Honor, you have to have causation under the UCL, whether you're going under the fraudulent prong, the unfair prong, or the unlawful prong. It has to cause, it has to be the reason you bought the ticket. It has to be the reason you have a so-called economic injury. That's been clear since Proposition 64. Okay, but this is, but this is on a motion to dismiss. Correct. So there are some things in the complaint that I went over. So how do I know that it would be futile that they couldn't say more in an amended complaint? Well, we've had two chances. I mean, we could go on forever. I mean, the judge obviously has discretion to allow an amendment. Judge Bencivengo denied it. But I would submit, Your Honor, they can't make the argument because they can't plead that these so-called cruel conditions caused the actual purchase, that but for the cruel conditions, these people would have bought their tickets when they've specifically pleaded their omissions case on the theory that they were totally unaware that any of this was going on. In the Great Bowl Run case, an animal activist organization bought the ticket so they could protest the show. They went there because it was cruel. In the Backus case, he bought the baking mix. The sale itself violated the California Sherman laws. It's against the California Sherman law to sell an adulterated product. There's nothing in 597 that prohibits SeaWorld from selling, and I'm not, it's not what it's selling, but there's nothing in that statute that prohibits them selling a ticket to a cruel show, period. So that's why we say this unlawful argument doesn't get to first base. Now, on the fraudulent prong, Your Honor, we, look, Wilson arose in a warranted product case. It involved a laptop computer that had a defect outside the warranty. Most of the cases since Wilson in both the Ninth Circuit and the district courts have been applying that same rule, that safety-only rule, in a product case after warranty. But we would submit that in this situation, there has to be a limit on this duty to disclose. There has to be some kind of limit. We're not talking here, again, about affirmative misrepresentations. If you lie about your product, then you should, you're going to be held to task by the consumer, regardless of what it's about, whether it's about safety or anything else. But we're talking about failure to disclose. Failure to disclose is a very different situation. There could be hundreds of different subjects that a reasonable consumer, under the way the courts have defined the materiality test, hundreds of different subjects that a reasonable consumer might find important in whether to do business with SeaWorld. In this case, we're talking about the conditions, they say, of the orcas. But it could be whether SeaWorld has a labor union, whether they recycle, you know, what the stadium's built out of, whether they have a sexual harassment policy. Any reasonable consumer could come in and say, well, that's important to me. And if I knew they wanted a unionized shop, I wouldn't have bought the ticket. So we say this is a limitless duty of disclosure that they're trying to get this court to adopt. And what I would urge the court to follow, or the reasoning in the cluster of cases that came out of the northern and central districts in the candy bar and the pet food cases that are now coordinated on appeal in the Ninth Circuit, were argued on December 8th. The Worth case, the Hodgson's case, the Dana case, where those judges looked at the same thing and said, look, there has to be a limit. You can't, you cannot have this limitless duty to disclose. How would it be enforced? I mean, safety may not be the best thing, but on the other hand, why wouldn't it? Why isn't that an appropriate limitation? In this case, these people had no expectation. They've pleaded no expectation about what they were going to find when they went to SeaWorld. In the Bardeen and the Doherty case, there was no duty to disclose there because neither of those plaintiffs pleaded any expectation about how, what the exhaust was made out of in the case of Bardeen, what the, that the car was going to leak oil in the case of Doherty. In the Rutledge case, which they say is their magic bullet here, is irrelevant. Rutledge was an affirmative misrepresentation case, but again, the difference is, in Rutledge, the plaintiff pleaded that he had an expectation that that computer screen would continue to function along with the useful life of the computer, and it didn't. So when you have a situation like this, well, there is no expectation of what you're going to get when you do business with the merchant, and the merchant hasn't lied to you and made a misrepresentation, and there is no warranty, then why would there be a duty to disclose anything but safety? What else would you require? And why would, why does a company like SeaWorld, for example, that puts on entertainment, charges people to come in and have a nice time with their family, they go to the orca show, they see the penguins, they ride the roller coaster, why would that business have a more onerous duty of disclosure under California law than General Motors or Toyota? And those companies, of course, have to disclose nothing about their products unless they make an affirmative misrepresentation, unless it concerns safety. So I would say that maybe it's not a perfect limit, but there has to be a limit, and we would urge Your Honors to follow that. But at the end of the day, whether you apply Wilson, whether you go to the common law test that some of the courts have applied coming from the Falk, so-called Falk-Judkins analysis, this case, in response to Your Honors' question about certification, you don't really need to deal with, you know, answer the question, because they didn't plead it, no matter whether you talk about Wilson being a controlling test or whether you talk about Falk-Judkins, because they failed to plead with specificity any vehicle, any plausible vehicle in which, had these things been disclosed, they would have been aware of it. And I think that's the significant difference. We urge Your Honors to follow the Morolda case, District Court of the Northern District of California, which requires you have to come in and show me an example of what you're talking about, where was this supposed to be disclosed, and attach it to the complaint. Not every court has followed that, but that's a pretty good test. But the Ninth Circuit decision in Daniel is right on point. Now, that was a summary judgment case. But when it got to the point in that case, tell me where you, the consumer, would have learned about this information about the rear end of these Ford Focuses, where would you have learned about this had it been disclosed? And there was evidence, very specific evidence, presented that each one of those plaintiffs had gone into the dealership, they had extensive conversations with the service personnel, they brought their cars in for warranty work, and that's where they got the technical service bulletin. So there was a plausible case that had Ford disclose this information at the dealership, these people would have learned about it. In this case, we have nothing other than generalized statements that at some point in the last 50 years, these plaintiffs went to SeaWorld. They were at a prior show. And that's where this should have been disclosed. Well, was it the month before Holly Hall went, or was it 20 years before? Because SeaWorld has been doing this since the 1960s. They say, well, it should have been at the point of sale. Well, what does that mean? Did they buy their tickets over the Internet? Did they buy their tickets at the gate? Did they get them from a travel agency? There's no detail on point of sale. And how would this even work as a practical matter? Because you have to consider what is not only the rule in this case, how would another defendant comply with this? What are you supposed to have when you get to the SeaWorld park? A reading room where the customer is invited to go over here, and here's a big computer screen, get on this, run a word search, and we've got all the information about SeaWorld you want to see. And how would you put that database together? What would go in it? I mean, it would be an endless exercise. And if the consumer said, well, I don't want to do that research, would you make him or her sign a waiver before they bought a ticket? Because otherwise they'd end up in a class just like this, with no connection between what they did, what motivated their purchase, and what was not disclosed to them. Okay. So that applies to the fraudulent prong. Yes. Does it apply with equal force to the unlawful prong? Well, the unlawful prong I think really kind of boils down to the same thing because it's not really that the so-called – Well, it's not exactly the same, right? Well, but I think what they're really getting at is that you didn't disclose this alleged animal cruelty. You didn't disclose it. And we say that it fails for all the reasons a fraudulent prong fails because, again, they haven't married up an omission, a place where an omission should have been made. They haven't married that up with any individual plaintiff's purchasing decision. And you have to do that because otherwise you've got – all you've got is SeaWorld making statements or not making statements. People who live in that environment buying tickets, but you don't have any proof, any connection, that what SeaWorld said or didn't say had anything to do with their decision to go to the park. And then you end up with a class like this that could have 20 million people in it, and you have no way of knowing, no way of knowing what motivated those purchases because the plaintiffs themselves can't marry any of this up. With respect to the Florida and the Texas claims, we say that I don't want to spend a lot of time on that, but the 9B problem applies to both – infects both of those unfair trade practice act claims. The Eleventh Circuit standard on specificity is not any materially any different than this Court's decision in Kearns. And I would submit Kearns controls regardless because we're in the Ninth Circuit. We've got state law claims, and the Ninth Circuit standard of pleading applies regardless of what state law governs. But be that as it may, the Eleventh Circuit standard in the Middle District, Southern District of Florida case is materially no different than what the Ninth Circuit's required. Florida statute requires you to plead specifically that you were exposed to the places where these omissions should have happened. Identify the advertisements. Identify the statements that were made where these omissions should have been disclosed. And if you don't do that, you cannot proceed under the Florida Unfair Deceptive Trade Practice Act. They also didn't plead under – and the same problem with the Texas statute. Texas, by statute itself, requires the plaintiff to plead and prove reliance, even as to an omissions claim. It's a specific requirement of Section 1750. You have to be able – you have to have relied on the omission. And they've invoked the so-called laundry list provision B-24, which is failure to disclose material facts. So they have to specifically plead reliance on that. And they didn't do it. And in both cases, you know, we don't have any facts pleaded with respect to the types of damages that you have to – that you can only recover under both the Florida and the Texas laws. In both instances, you have to plead the facts, just not the amount. It has nothing to do with the amount, but the actual type of loss that you suffered. Did you get what was promised or not? Did you – is what was delivered to you what you paid for? That's what has to be pleaded under both statutes, benefit of the bargain or the out of – they didn't do that. And so that's not just a technical problem. That defines their standing to sue under both of those laws. And finally, with the unjust enrichment claim, again, as this Court made clear in the Vest case and later in the Kearns case, if the basic thrust of the plaintiff's case is a unified course of fraudulent conduct, which is what we clearly have here, because on every other page of this complaint we've got fraud, we've got misrepresentation, we've got omission, on and on and on. The basic thrust of the plaintiff's case is a unified course of fraudulent conduct. All of the claims that come under that, regardless of what their individual titles are, have to be pleaded with the specificity that Rule 9b of the Federal Rules of Civil Procedure requires. And they failed to do that with the unjust enrichment claim. Your Honor, unless you have any questions, I think. Anyone have any questions? There do not appear to be any additional questions. Thank you. Thank you for your argument. Just briefly in response, Your Honor, I want to move to the Florida and Texas statutes, which we didn't have time to touch base on. So the errors below with respect to the Florida Deceptive and Unlawful Trade Practices Act and the Texas Deceptive Trade Practices Act were very straightforward errors. The district court said, I am dismissing those claims for the same reasons, quote, unquote, for the same reasons I'm dismissing the California claims. The UCL is not the same as those two statutes. With respect to Florida, there is no requirement to plead reliance. I think that's abundantly made clear in the cases we cite, all of which say the same thing. You do not have to plead actual reliance. That is a fundamental distinction between that statute and the California statute. There is a debate about the application of 9b. We absolutely agree, as we said in our briefs, that 9b applies to any claims sounding in fraud that make it to this Court. We all agree on that. There is a – there are two different parts of the FDU TPA, however. There's the deceptive part and there is the unlawful part. And with respect to that provision – not the unlawful part, I'm sorry, the unfair practices part. With respect to that, it's analogous to the unlawful prong of the UCL, which also is somewhat analogous to the unjust enrichment claims. SeaWorld produces orca shows that constitute cruelty to these animals. That – and they took the patrons' money for the shows. That does not require a showing of deception. We do have separate allegations about deception, but it constitutes conduct that is remediable because it is unethical and it violates public policy. So the Court erred entirely in just running roughshod right over those tests under Florida law, right under the test under Texas law. So for the reasons we cited in our brief, we think that – we hope the Court will find that pretty plain. With respect to the Texas statute, as counsel alluded to, there is literally a statutory duty to disclose under – that we invoke and that we invoked in our second-minute complaint specifically. Florida has no requirement to disclose – to establish a duty to disclose. So the errors made in those two States are, in some respects, more glaring than any of the errors made under California law. With respect – lastly, with respect to the final comments about damages, we've cited the cases under Texas and Florida law. It's sufficient to say you would take a refund. There's no more necessary for purposes of pleading. And again, lastly, on the UCL unlawful prong, the wrong test was applied by the Court. The question is whether the unlawful conduct resulted in damages to the plaintiff, not whether they went to the show for that reason. And even in Great Bull, the Court did not make that distinction and make that the basis for its decision to deny a motion to dismiss. If there's not any further questions from the Court, we are done. Thank you. Thank you so much. All right. That would conclude argument for today. I would thank you both for your argument. This matter will stand submitted. The Court is now in recess until tomorrow at 9 o'clock. My understanding, just for the students, is I think my law – one of my law clerks will be speaking to you, and after we complete conference, I'll come back out just for a general Q&A about the courts, et cetera. So thank you, and I hope that the audience found the arguments enlightening and that the attorneys lived up to your expectations. Thank you.
judges: Wallace, Callahan, Selna